IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. CR-21-171-TDD |
| | ) |
| GEORGE MCENTIRE SMITH | ) |
| | ) |
| Defendant. | ) |
| | ) |

**ORDER**

Before the Court are five motions in limine filed by Defendant George McEntire Smith [Doc. Nos. 83, 84, 86, 87, and 106]. The government filed a combined response [Doc. No. 108] indicating it agreed to most of these motions. The government stated opposition to only Defendant's motion to exclude expert testimony [Doc. No. 106]; it asked the Court to defer ruling on Defendant's motion to limit crime scene and autopsy photographs [Doc. No. 86].

The Indictment [Doc. No. 16] charges Defendant with Murder in Indian Country, Use, Carry, Brandish and Discharge of a Firearm During and in Relation to a Crime of Violence, and Causing the Death of a Person in the Course of a Violation of 18 U.S.C. § 924(c). These charges arise out of allegations that Defendant shot and killed Jimmy Arthur.

**I.    Hearsay Testimony**

Defendant moves to exclude statements he anticipates the government may seek to introduce at trial. [Doc. No. 83]. The government responds, stating that it does not intend to elicit any hearsay statement not permitted under the Federal Rules of Evidence. Any

necessary ruling on the admissibility of testimony Defendant believes constitutes inadmissible hearsay will be made at trial upon timely objection.

## II.     Opinion Testimony of Defendant's Guilt

Defendant, next, moves to exclude any statement of opinion by the alleged victim's wife, Lena Arthur, regarding Defendant's guilt. [Doc. No. 84]. Defendant represents that Ms. Arthur has previously stated that Defendant killed the victim. Ms. Arthur did not witness the shooting, so Defendant argues that such a statement, if offered at trial, would constitute improper lay opinion under Fed. R. Evid. 701. The government does not oppose this motion and agrees not to elicit testimony from lay witnesses as to their personal opinions of Defendant's guilt. Accordingly, the motion [Doc. No. 84] is granted.

## III.    Crime Scene and Autopsy Photographs

Defendant moves to limit the number of crime scene and autopsy photographs the government may admit at trial. [Doc. No. 86]. Defendant concedes that some of the photographs may be properly used as illustrations and explanations of testimony relating to the crime scene and autopsy of the victim. Defendant's primary concern is that permitting the government to admit more photographs than necessary for these purposes would pose a danger of unfair prejudice under Fed. R. Evid. 403. The government explains that it has not yet selected its trial exhibits and that it intends to share those exhibits with defense counsel before trial. It asks the Court to defer ruling on this issue so that the parties can confer and determine if Defendant has any objections to specific exhibits it intends to admit. The Court agrees that this is the best approach to find an appropriate solution on the

issue of this photographic evidence. The parties should be prepared at the pretrial conference to notify the Court of the status of their agreement or disagreement on this issue.

### IV.   Testimony Regarding Defendant's Mental Health

Defendant moves to exclude any statement regarding his mental health. [Doc. No. 87]. Defendant represents that discovery materials contain witness statements that he suffers from "some unspecified mental health condition or has schizophrenia." *Id.* at p.2. He argues that evidence of his mental health is irrelevant and would be unfairly prejudicial. The government states that it "agrees not to elicit testimony from lay witnesses as to their personal opinions of the Defendant's mental health or that the Defendant suffers from a mental illness." [Doc. No. 108] at p.2. The government has not indicated that it intends to offer any expert testimony regarding Defendant's mental health, nor does the government argue that such testimony would be relevant to any trial issue. Therefore, Defendant's motion [Doc. No. 87] is granted.

### V.   Expert Testimony of Special Agent Ryan Woolley

Finally, Defendant moves to exclude the expert testimony of Special Agent Ryan Woolley. [Doc. No. 106]. The government opposes this motion and requests that the Court conduct a *Daubert* hearing before ruling on it. In its Notice of Intent to Offer Expert Testimony, the government explains that Agent Woolley is a special agent with the OSBI who will "testify about his expertise in blood pattern/spatter analysis" and "about his analysis in accordance with his report." [Doc. No. 78] at p.2.

Defendant takes issue with one statement in Agent Woolley's report [Doc. No. 106-1]. Agent Woolley states that, after speaking with the medical examiner who

conducted the autopsy of the victim, he was able to eliminate potential causes of a blood pattern found on the ceiling at the crime scene. He then stated:

> After review of their respective statures, [the victim] was listed as 6'0", and [Defendant] is listed as 6'5". This would be consistent with the downward trajectory presented in the autopsy report along with the upper back of the head injury defect and the back spatter presenting to the ceiling of the dining room.

*Id.* at pp. 5–6. Defendant argues that the Court should exclude this opinion because it is not adequately supported by application of reliable methodology and would not assist the jury in understanding the evidence or determining a fact in issue.

The principles of *Daubert* and its progeny,[1] which are codified in Rule 702, oblige the Court to perform an important gatekeeping function regarding expert opinion testimony. In considering whether an expert's opinion is admissible, the Court performs a two-step analysis to determine, first, whether the expert is qualified by knowledge, skill, experience, training, or education to render the opinion that the expert offers and, second, whether the expert's opinion is reliable and would assist the trier of fact. *See United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc); *Daubert*, 509 U.S. at 591. At the second step, "Rule 702 requires the district court, before admitting expert testimony, to ensure that testimony 1) has a reliable basis in the knowledge and experience of the expert's discipline, and 2) is relevant to the task at hand." *United States v. Chapman*, 839 F.3d 1232, 1237 (10th Cir. 2016) (internal quotation omitted).

---

[1] *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

Upon consideration of the issues presented, the Court finds that Agent Woolley appears well-qualified to testify as an expert regarding the subjects of his proposed testimony. Agent Woolley's curriculum vitae shows his extensive training and experience as a blood pattern and spatter analyst and his considerable education and training in the area of forensic crime scene analysis. This information may be verified through a preliminary examination of Agent Woolley at trial, and Defendant does not question his expert qualifications in these areas. Thus, for present purposes, the Court assumes Agent Woolley is qualified to offer the proposed opinions and turns to the questions of reliability and relevance.

Agent Woolley's curriculum vitae indicates that he has previously provided expert testimony in multiple forensic disciplines. Assuming Agent Woolley's expertise in these areas, as shown by his curriculum vitae and as may be verified by his testimony, his expert knowledge and experience may provide a sufficient basis for him to offer reliable opinions regarding blood pattern and spatter analysis based on the photographs of the crime scene in this case. The Court also finds that this proposed testimony would be relevant to trial issues.

However, the Court finds that Agent Woolley's report, by itself, is insufficient to determine whether his opinion relating to the trajectory of the gunshot and how that trajectory relates to the differences in heights between Defendant and the victim is the "product of reliable principles and methods" that have been "reliably applied . . . to the facts of this case." *See* Fed. R. Evid. 702(c)–(d). The Court will expect the government to

show Agent Woolley's trajectory opinion meets the requirements of Rule 702 before it seeks to elicit this testimony at trial.

## CONCLUSION

For these reasons, the Court finds that Defendant's motions in limine not opposed by the government [Doc. Nos. 83, 84, and 87] should be **GRANTED**. The Court **RESERVES** ruling on Defendant's other motions in limine [Doc. Nos. 86 and 106]. Specifically, the Court reserves ruling on the number of crime scene and autopsy photographs that may be admitted and on the scope of Agent Woolley's expert testimony.

**IT IS SO ORDERED** this 17th day of June, 2022.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE